## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| THOMAS FOSTER, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 23-0468-WS-M |
| | ) |
| ALABAMA & GULF COAST | ) |
| RAILWAY, LLC, | ) |
| | ) |
|    Defendant. | ) |

### ORDER

This matter is before the Court on its *sua sponte* review of its subject matter jurisdiction.[1] The defendant removed on the basis of diversity, but the Court was unable on review to confirm the existence of jurisdiction. The Court offered the defendant an opportunity to supplement its removal papers, (Doc. 5), and the defendant has done so. (Doc. 6).

The complaint, (Doc. 1-1), alleges that the plaintiff was injured in January 2023 while working for his employer, the Alabama State Port Authority ("Port Authority"), allegedly due to the defendant's negligence or wantonness. The plaintiff asserts "serious bodily injuries," *viz*.: an unidentified right knee injury; an unidentified left shoulder injury; and two lumbar herniated nuclei pulposi. (*Id*. at 11). The plaintiff's damages are asserted as: an unidentified surgery; unidentified medical treatment, past and future; unidentified and unquantified medical expenses, past and future; undescribed physical pain and suffering, and

---

[1] "Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Because, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue," it "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

undescribed mental anguish, past and future; unidentified permanent injury; unquantified loss of wages and loss of earning capacity, past and future; and loss of enjoyment of life, past and future. (*Id.*). The complaint seeks compensatory damages "in excess of the minimum jurisdictional limits of this Court." (*Id.* at 11, 13).[2]

As the party seeking a federal forum, the burden rests on the defendant to demonstrate that the Court has such jurisdiction. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Because the complaint does not demand a specific sum, the defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds $75,000, exclusive of interest and costs. *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010). A defendant may demonstrate that the amount in controversy is facially apparent from the complaint itself, or it may offer evidence beyond the pleading to meet its burden. *Id*.

The defendant initially relied only on the face of the complaint. (Doc. 1 at 8). As the Court noted, the complaint in *Williams* alleged that the plaintiff tripped over a curb and suffered permanent physical and mental injuries, incurred substantial medical expenses, suffered lost wages, experienced a diminished earning capacity, and would continue to suffer these damages in the future, and it demanded both compensatory and punitive damages. *Id.* at 1318. The Eleventh Circuit held that, based on these allegations, "it is not facially apparent from [the] complaint that the amount in controversy exceeds $75,000." *Id.* at 1320. The defendant in its removal papers did not acknowledge *Williams*. The Court gave the defendant an opportunity to address and distinguish *Williams*, but the defendant has declined to do so. The Court therefore concludes that it is not apparent from the face of the complaint that the amount in controversy more likely than not exceeds $75,000.

---

[2] The minimum jurisdictional limit of an Alabama Circuit Court is $20,000.01. Ala. Code § 12-11-30(1).

In its supplemental filing, the defendant offers evidence to demonstrate the amount in controversy. This evidence is in the form of an unsworn letter from the business office manager of a local "center for spine health." (Doc. 6 at 3). The author identifies the cost of certain treatments offered by the center and a range of costs for treatments (especially surgery and physical therapy) offered by third parties. The Court assumes for argument that, in conducting its jurisdictional inquiry, it may properly consider an unsworn letter, not shown to be based on personal knowledge, addressing charges by third parties for various treatments.

The witness focuses on the lower back injury. Upon presentation with complaint of low back pain, the center would charge $190 for a lumbar X-ray, along with $300 for a new patient visit. "If" the results indicated therapeutic injections, the center would charge $125 for an intramuscular injection and $195 for a trigger point injection. "If" a physician recommended further imaging, another facility would charge $1,500 for an MRI of the lumbar spine, and the center would charge $110 for a follow-up visit. "If" it were determined that the plaintiff would benefit from epidurals, they would be provided by another facility, which would charge $500 to $1,500 per injection, depending on the facility. "If" the condition indicated surgery, the physician would charge $5,600, the anesthesiology service would charge $500, and the facility would charge $5,000 to $20,000, depending on the facility. With or without surgery, the center would recommend physical therapy ("PT") at another facility, which would cost $200 for an initial evaluation visit and $100 to $300 per session, depending on the facility, for six to twelve sessions. (Doc. 6-1).

As to the plaintiff's knee and shoulder injuries, the witness states that the charges would be $115 each for X-rays, $175 each for therapeutic injections, and $1,500 each for MRI's. The witness did not address treatment by third parties. (Doc. 6-1).

The defendant adds all these costs together, using the high-end $20,000 facility fee, a mid-range PT rate of $200 for a high-end twelve sessions, and the

3

low-end epidural fee for a single injection, to derive a figure of $35,000 in medical expenses implicated by the complaint. (Doc. 6 at 5). The Court cannot agree. First, the defendant has not explained how the Court, without engaging in impermissible speculation, could find it more likely than not that the high-end $20,000 facility figure is in controversy. Second, the defendant has identified no non-speculative basis for finding it more likely than not that the plaintiff's treatment for his unidentified knee and shoulder injuries extended beyond (and even this is unknown) an initial X-ray and therapeutic injection.[3] Third, the defendant has offered no non-speculative basis for assuming twelve PT sessions at $200 per session when its witness indicated it could just as easily be six PT sessions at $100 per session.

The Court commends the defendant for its diligence and resourcefulness in obtaining the evidence it has presented. However, for the reasons stated above, the Court concludes that the evidence, shorn of the defendant's speculation, leaves the amount in controversy for medical treatment more likely than not well south of $20,000.

In its supplemental brief, the defendant also stresses the complaint's demand for lost wages. While offering no evidence, the defendant asserts that public records reflect that the Port Authority in 2022 employed two persons with the plaintiff's name, one of whom earned over $76,000 that year and the other of whom earned almost $26,000. (Doc. 6 at 5-6). The defendant has identified no non-speculative basis on which the Court could find it more likely than not that the plaintiff is the higher compensated of these two. As to the lower-paid employee, the defendant proposes hopefully that the Court assume the plaintiff never returned to work after the subject incident, such that his lost wages would have

---

[3] Even if the plaintiff's surgery was in connection with his shoulder or knee injury, the defendant has offered no evidence of any sort as to its nature or cost. Moreover, in that event the defendant's evidence of the cost of spinal surgery would be irrelevant, since the complaint does not allege multiple surgeries.

approximated $19,500 by the time he filed suit. (*Id*. at 6). The complaint, however, alleges only that the plaintiff "has been caused to lose time from his employment," (Doc. 1-1 at 11), and the Court cannot find that this imprecise phrase renders it more likely than not that the plaintiff missed nine months of work due to his injuries when he might as easily have missed nine days.

The balance of the defendant's briefing simply lists the items of damage alleged in the complaint and generally urges the Court to employ its experience and common sense to extrapolate from their mere listing that the amount in controversy requirement is satisfied. (Doc. 6 at 6-7). This is exactly the approach, detached from specific allegations or evidence, that the *Williams* panel held inadequate to sustain jurisdiction.

Using its experience and common sense, the Court can easily conclude that the amount in controversy *might* exceed $75,000. The defendant's burden, however, is to show that it *more likely than not* exceeds the jurisdictional amount. The defendant has not carried this burden. For the reasons set forth above, this action is **remanded** to the Circuit Court of Mobile County.

DONE and ORDERED this 4th day of January, 2024.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE